JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

NICOLE M. KIM  (NYBN 4435806)
Assistant United States Attorneys

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102
   Telephone: (415) 436-6401
   Facsimile: (415) 436-6982
   E-Mail:   nicole.kim@usdoj.gov

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 08-0083 PJH |
|    Plaintiff, | |
| v. | UNITED STATES' MEMORANDUM RE:  CONFLICT OF INTEREST |
| MARTEL MURILLO VALENCIA and EDUARDO ZARAGOZA, | |
|    Defendants. | |

**INTRODUCTION**

The United States files this Memorandum in anticipation of the March 27, 2008 status on the identification of counsel for defendant Martel Murillo Valencia and the issue of attorney Robert Lyons' potential conflict of interest in the above-referenced matter.

**FACTUAL BACKGROUND**

On March 12, 2008, attorney Robert Lyons informed the Court that Martel Murillo Valencia, a defendant in United States v. Guillermo Zaragoza et al., Crim. No. 08-0083 PJH, intends to retain him as counsel of record for all further proceedings in this case.  Mr. Lyons also informed the Court that he has represented a co-defendant in this matter, Eduardo Zaragoza, in a

Government Memorandum re Attorney Conflict of Interest
Crim. No. 08-0083 PJH                              1

state drug-related prosecution. To the Government's knowledge at this time, Mr. Lyons remains the counsel of record for Eduardo Zaragoza in the state case. For the reasons set forth below, Mr. Lyons' representation of Eduardo Zaragoza in the state drug case, even if discontinued, creates a potential conflict of interest for his representation of Martel Valencia in the current matter before the Court.

## **DISCUSSION**

In or around November 2005, Eduardo Zaragoza was charged by the San Francisco District Attorney's Office with possession with the intent to sell methamphetamine,[1] as well as transportation of a controlled substance and two charges relating to false or deceptive identification. After a failure to appear, a bench warrant was issued for Eduardo Zaragoza in 2006. Mr. Lyons' representation of Eduardo Zaragoza in this state case began in or around October 2007. Since October 2007, Mr. Lyons has made several court appearances in connection with Eduardo Zaragoza's state case. Mr. Lyons has indicated that he did not know Eduardo Zaragoza's real name during this time. Nevertheless, a potential conflict of interest exists in Mr. Lyons' proposed representation of Martel Valencia in this matter for several reasons.

First, Mr. Lyons remains Eduardo Zaragoza's counsel of record in his state case. Second, Eduardo Zaragoza and Martel Valencia are charged together in the current matter not only in a drug conspiracy, but also in a substantive count that alleges their joint involvement in a specific methamphetamine transaction. This substantive count also charges two other members of Eduardo Zaragoza's family - Guillermo Zaragoza and Juan Zaragoza. Third, Eduardo Zaragoza's state case involves a charge of methamphetamine possession with intent to sell - virtually the same offense charged in the case before the Court. Fourth, the Government does not know whether Mr. Lyons has information about Eduardo Zaragoza or other indicted defendants in this case (many of whom are members of Eduardo Zaragoza's family), or whether Mr. Lyons has represented any other defendant, either criminally or civilly, in a case or matter

---

[1] Eduardo Zaragoza was stopped in a vehicle that contained approximately $4,000 in U.S. currency and 100 grams of methamphetamine.

Government Memorandum re Attorney Conflict of Interest
Crim. No. 08-0083 PJH                                                         2

1  whose subject is related to the methamphetamine prosecutions at issue in this case.

2       A criminal defendant's Sixth Amendment right to effective assistance of counsel includes
3  the right to counsel who is unimpaired by conflicting loyalties. United States v. Allen, 831 F.2d
4  1487, 1494 (9th Cir. 1987). This is "perhaps the most basic of counsel's duties." Strickland v.
5  Washington, 466 U.S. 668, 690, 692 (1984). "To establish a Sixth Amendment violation based
6  on a conflict of interest [a federal habeas petitioner] must show that (1) counsel actively
7  represented conflicting interests; and (2) an actual conflict of interest adversely affected his
8  lawyer's performance." Sanders v. Ratelle, 21 F.3d 1446, 1452 (9th Cir. 1994). Once an actual
9  conflict has been demonstrated, prejudice is presumed since the nature of the harm may not
10 consist solely of what the lawyer does, but of "what the advocate finds himself compelled to
11 refrain from doing, not only at trial, but also during pretrial proceedings and preparation."
12 Holloway v. Johnson, 435 U.S. 475, 490 (1975).

13      In part because of the importance attached to conflict-free assistance, there is no absolute
14 right to counsel of choice, and a trial court has broad discretion to disqualify counsel in
15 situations where an actual or even potential conflict exists. Wheat v. United States, 486 U.S.
16 153, 163 (1988) (district courts have "substantial latitude" to reject waivers of conflict and to
17 disqualify counsel "not only in those rare cases where an actual conflict of interest may be
18 demonstrated before trial, but in the more common cases where a potential for conflict exists
19 which may or may not burgeon into an actual conflict"). Rather, while the Sixth Amendment
20 guarantees a defendant the right to "assistance of counsel for his defense," including his chosen
21 counsel if he can retain him, "the essential aim of the Amendment is to guarantee an effective
22 advocate for each criminal defendant rather than to ensure that a defendant will inexorably be
23 represented by the lawyer whom he prefers." Id. at 159; United States v. Rewald, 889 F.2d 836,
24 858 (9th Cir. 1989) (affirming district court's refusal to approve substitution of counsel with
25 potential conflict of interest).

26      In this case, Mr. Lyons' representation of Martel Valencia may put him at odds with
27 Eduardo Zaragoza, should Eduardo Zaragoza choose to provide information and, if necessary,
28 testify against Martel Valencia. Should Mr. Lyons become counsel for Martel Valencia, Mr.

1  Lyons will owe a duty of effective representation to Martel Valencia, yet he still owes a duty of
2  loyalty and confidentiality to current and prior clients, who presumably have reposed in him
3  confidential, privileged information.  In this situation, either Martel Valencia would be forced to
4  suffer, and perhaps receive ineffective assistance of counsel, or Mr. Lyons would be forced to
5  risk committing professional misconduct and violating the privilege with the prior client(s).
6       In Wheat, the Supreme Court held that the Sixth Amendment right to counsel of one's
7  choice is limited when a criminal defendant's attorney has represented codefendants charged in
8  the same criminal conspiracy, and that a defendant may not "insist" on representation by an
9  attorney who has a previous or ongoing relationship with another party:

> Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.

12 Wheat, 486 U.S. at 160.
13      These considerations are equally compelling in cases like this, where the conflict is
14 presented not by simultaneous representation of conflicting clients, but by successive
15 representation of clients.  United States v. Rewald, 889 F.2d 836 (9th Cir. 1989), amended 902
16 F.2d 18 (1990); Fitzpatrick v. McCormick, 869 F.2d 1247, 1252 (9th Cir. 1989);  Mannhalt v.
17 Reed, 847 F.2d 576 (9th Cir. 1988).  It is always "the potential for conflict of interest [that] is
18 determinative." Rewald at 858 (emphasis in original).  Indeed, the Ninth Circuit has strongly
19 supported the district courts' protection of the integrity of the attorney-client relationship,
20 accomplished by disqualifying a particular attorney and refusing to accept waivers of conflict
21 from the affected defendants, when serious potential for conflicts of interest exist that could
22 deprive a defendant of effective assistance of counsel:

> The interest to be preserved by preventing attorneys from accepting representation adverse to a former client is the protection and enhancement of the professional relationship in all of its dimensions . . . .  Perhaps the most important aspect of the professional relationship served by this rule is the preservation of secrets and confidences communicated to the lawyer by the client.  Confidentiality is not, however, the only aspect of the professional tie preserved.  The lawyer and the client should also expect that the lawyer will use every skill, expend every energy, and tap every legitimate resource in the exercise of independent professional judgment on behalf of the client and in undertaking representation on the client's behalf.

28 Thomas v. Municipal Court, 878 F.2d 285, 289 (9th Cir. 1989).

Nor will a waiver of the conflict by Martel Valencia (and by Eduardo Zaragoza) solve the problem.  As the Supreme Court noted in Wheat, 486 U.S. at 159, some such conflicts cannot effectively be waived.  In Wheat, the defendant sought, over the Government's objection, to retain an attorney who was representing two codefendants, either of whom might decide to testify, or be called to testify at their separate trials, as government witnesses. Id. at 156.  Despite the defendants' claim that the Government's identification of a potential conflict of interest was "highly speculative and bore no connection to the true relationship between the co-conspirators" (id.), the district court refused to accept the three defendants' waivers of the conflict of interest.  The Supreme Court approved and affirmed the district court's action, holding that a defendant's waiver "does not necessarily solve the problem," id. at 162, because the later appellate issue of ineffective assistance of counsel remains.  "[W]e note, without passing judgment on, the apparent willingness of Courts of Appeal to entertain ineffective-assistance claims from defendants who have specifically waived the right to conflict-free counsel." Id. at 162.  The Supreme Court concluded:

> [W]e think the district court must be allowed substantial latitude in refusing waivers of conflict of interest, not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.
>
> . . .
>
> [While] the District Court must recognize a presumption in favor of petitioner's counsel of choice . . . that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict . . . .  The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court.

Wheat, 486 U.S. at 163 (emphasis added.)

The Ninth Circuit's reasoning in the analogous situation presented in United States v. Kenney, 911 F.2d 315 (9th Cir. 1990) is informative.  In that case, the Ninth Circuit affirmed the district court's disqualification of counsel and refusal of waivers based upon a "substantial potential for conflict" in the attorney's simultaneous representation of the defendant and a business associate of the defendant who was the subject of a grand jury investigation.  Both clients sought to waive the conflict, but the district court refused the waivers because of the

possibility that one of the clients <u>might</u> elect to cooperate with the government:

> The government had approached appellant several times to obtain his cooperation as part of a plea agreement to give testimony against other persons. The possibility for a plea agreement did not appear to be out of the question; in fact the government had already made at least one offer that was not acceptable to the appellant. Had further plea negotiations been undertaken defense counsel would have been unable to represent either client without compromising the interests of the other. Under the circumstances the trial court did not abuse its discretion in disqualifying trial counsel on this basis.

<u>Kenney</u>, 911 F.2d at 321.

The United States appreciates that Martel Valencia may want Mr. Lyons to represent him, and that this Court should not interfere with that choice unless it is necessary to protect Martel Valencia's preeminent right to conflict-free counsel, or the prior clients' right to Mr. Lyons' ongoing loyalty and protection of his confidences. However, Mr. Lyons' proposed representation of Martel Valencia presents significant concerns for the institutional integrity of attorney-client relationships, and threatens to undercut the fairness and finality of judgments obtained here against defendant Valencia. Even if Mr. Lyons is no longer the counsel of record in Eduardo Zaragoza's state drug case, Mr. Lyons has already represented him for 5 months and as previously indicated, it is unknown whether Mr. Lyons has information about Eduardo Zaragoza or other defendants in this case that would hinder any cooperation efforts by Eduardo Zaragoza or Martel Valencia. Thus, the Government believes that this conflict of interest renders Mr. Lyons incapable of remaining as counsel for defendant Martel Valencia in this matter. <u>See</u> <u>United States v. Moscony</u>, 927 F.2d 742, 747-50 (3d Cir. 1991) (attorney disqualified because he had simultaneously represented the defendant and several other witnesses during the grand jury investigation and two of those witnesses would testify at the defendant's trial); <u>United States v. Vasquez</u>, 995 F.2d 40 (5th Cir. 1993) (defense counsel disqualified because he was also representing a potential witness).

## **CONCLUSION**

Serious potential conflicts of interest threaten automatic reversal on appeal based upon post-conviction claims that an actual conflict of interest arose. As the Ninth Circuit has recognized, the execution of waivers will not save a conviction because reversible error is built in for lack of effective, conflict-free representation. <u>Thomas</u>, 878 F.2d at 290. Accordingly, the

Government Memorandum re Attorney Conflict of Interest
Crim. No. 08-0083 PJH                    6

1  United States respectfully requests that the Court conduct an inquiry to determine whether a
2  conflict exists and to ensure that any waiver of conflict executed by Martel Valencia and
3  Eduardo Zaragoza is knowing, intelligent, complete, and voluntary.  In the alternative, if the
4  Court agrees with the Government, and agrees that such waivers are inadequate, the United
5  States requests that previously appointed CJA attorney Robert Waggener remain Martel
6  Valencia's counsel of record, or allow Martel Valencia to obtain new counsel to represent him in
7  this matter.

9  DATED: March 19, 2008                                    JOSEPH P. RUSSONIELLO
                                                            United States Attorney

                                                            /s/ Nicole M. Kim
                                                            _____
                                                            NICOLE M. KIM
                                                            Assistant United States Attorney